**Judith ODIN, Appellant,**

v.

**UNITED STATES of America.**

**No. 79–2280.**

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 3, 1980.

Decided June 16, 1981.

---

Clifford Shoemaker, Washington, D.C., for appellant.

Alan Rubin, Atty., Dept. of Justice, Washington, D.C., with whom Alice Daniel, Asst. Atty. Gen., and Jeffrey Axelrad, Atty., Dept. of Justice, Washington, D.C., were on the brief, for appellee.

Before McGOWAN and MacKINNON, Circuit Judges, and GASCH *, United States District Court Judge for the District of Columbia.

Opinion for the Court filed by Circuit Judge MacKINNON.

MacKINNON, Circuit Judge:

The principal issue in this case is whether the Federal Tort Claims Act permits a claimant who fails to request her full damages in her original claim form to amend that claim after the agency purports to grant it in full. The ultimate issue posed is whether a claimant may bring suit in federal court following the agency's decision to "disregard" the amended claim.

I

Appellant Judith Odin received a federally sponsored swine flu immunization on December 4, 1976. On March 10, 1977, she informed the United States Public Health Service by letter that her arms and legs had become painful as a result of the shot, and requested a claim form to obtain "assistance with the doctor bills", which she estimated "amount to something over six hundred dollars to date". She was sent a Standard Form 95, which she executed on March 23, claiming a total of $791 in damages for her doctor bills. The Public Health Service received the SF 95 on April 18, 1977, and forwarded it to the Torts Branch of the Department of Justice's Civil Division for administrative processing.

Over the next year, the Torts Branch contacted Odin and her physicians several

---

* Sitting by designation pursuant to 28 U.S.C. § 292(a).

times to procure information concerning the extent of appellant's insurance coverage, her medical history and treatment, and the nature and extent of her injuries. In late May, 1978 Odin hired an attorney. On May 31, 1978, he informed the Torts Branch that Odin "still complains of pain in her legs which is exacerbated by activity". On June 19, 1978 he again explained to the Torts Branch that the physical effect of the flu shot was ongoing:

> You should be aware that presently my client continues to suffer from *pains in her legs* and has consulted Dr. Hadin regarding *a problem she now has in her eyes as well. She complains of tiring easily and lacking strength in her lower extremities.* Her difficulty increases with stressful activities including going upstairs, getting up from a sitting position or stepping from a curb. Unfortunately Mrs. Odin has a 12 year old handicapped child and must physically assist this child in many of her activities. (Emphasis added)

On August 10, 1978, the Department of Health, Education and Welfare, with full knowledge of Odin's condition, informed counsel that Odin's claim for damages had been granted in full. HEW enclosed a voucher for $791, which it requested that both Odin and counsel sign and return to the agency. Counsel returned the voucher to HEW, unsigned, on September 5, and enclosed an amended claim for $1,000,000.[1] Counsel informed HEW that "Mrs. Odin's injuries preclude her from accepting the offer of $791 in full settlement of her claim and she hereby rejects same." He explained that "[t]he prior claim figure, due to Mrs. Odin's misunderstanding of the claim form, only reflected her medical bills to date of filing." An uncontradicted affidavit in the record reflects that Odin believed she could file subsequent claim forms for each accumulation of medical bills or damages as they accrued.

On September 18, 1978, the Torts Branch informed counsel that it would "disregard" Odin's amended claim. The Torts Branch stated that because her claim had been granted in full, it was no longer a pending claim, and thus could not be amended. Two months later the Torts Branch expanded upon this theme in a letter to counsel:

> The August 10, 1978 letter which you received from Ms. Hertz [of HEW] was not a mere offer in settlement of your client's claim. Instead, it was a full acceptance of your client's offer to receive $791.00 in full compensation of the injuries which she allegedly sustained as a result of her swine flu inoculation. Your client's refusal to accept the amount which she claimed administratively terminates her administrative claim.

Because Odin's claim had been granted in full, the agency explained, she also was not entitled to bring suit under the Federal Tort Claims Act. The agency accordingly returned the $791 voucher for the signature of Odin and her counsel. In essence, Odin was told her options were to "take it or leave it."

Rejecting both these options, Odin filed suit under the Federal Tort Claims Act in the United States District Court for the Central District of California, seeking $1,000,000 in damages. The case was transferred to the United States District Court for the District of Columbia, where the government's motion to dismiss for lack of subject matter jurisdiction was granted. Following two unsuccessful motions to vacate the dismissal, Odin appealed. We now reverse.

## II

Prior to the passage of the Federal Tort Claims Act, the ancient doctrine of sovereign immunity generally barred citizen tort suits against the federal government.[2] In-

---

1. Although the record is unclear as to the basis for the enlarged claim, counsel at oral argument stated that the amount of the claim was increased to request damages for pain and suf-fering and a partial physical disability resulting from the immunization.

2. See e. g., *Gibbons v. United States*, 8 Wall. 269, 19 L.Ed. 453 (1869); Borchard, *Govern-*

jured citizens therefore turned to Congress for relief, seeking enactment of private claims bills to remedy their specific and individual injury.[3] In the early twentieth century, however, Congress began serious consideration of a general tort claims statute, because of both the unfairness inherent in the immunity doctrine and the burdens imposed upon the legislature by the flood of private claims bills.[4] These efforts culminated in 1946 with the passage of the Federal Tort Claims Act,[5] which proclaimed the basic principle that the United States bears full liability for injuries.

> caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant for such damage, loss, injury or death in accordance with the law of the place where the act or omission occurred.[6]

Although the 1946 Act contained a mechanism for administrative claim settlement, its scope was very limited. First, the Act provided for administrative settlement of only those claims which did not exceed $1,000 in value,[7] a figure which was raised in 1959 to $2,500.[8] This limitation in and of itself effectively forced most tort claims against the government into the courts.

Second, use of the administrative settlement process was completely voluntary.[9] Thus, the overall effect of the Act was simply to transfer to the courts the burdens of which Congress had previously relieved itself.

Congress therefore amended the Act in 1966,[10] in accordance with recommendations made by the Department of Justice.[11] The Department presented data to Congress which indicated that the thousands of tort suits filed against the United States each year had contributed unnecessarily to clogged judicial dockets;[12] that approximately 80% of the meritorious suits filed were eventually settled by Justice prior to trial;[13] and that the federal agencies possessed the expertise necessary to settle many of these claims.[14] Congress accordingly amended the Act to make prior resort to the administrative claim settlement process a mandatory pre-condition to filing suit in court.[15] It also gave the heads of federal agencies the authority to settle claims up to $25,000 in value, but required prior written approval from the Attorney General to settle claims greater in amount.[16] The purpose of these amendments was to "provid[e] for more fair and equitable treatment of private individuals and claimants when ... they are involved in litigation with their Government"[17] and to "ease court conges-

---

*mental Responsibility in Tort,* 36 *Yale L.J.* 1, 38-41 (1926); Borchard, *Governmental Liability in Tort,* 34 *Yale L.J.* 1, 28-45 (1924).

**3.** *See* S.Rep. No. 1400, 79th Cong., 2d Sess. (1946); *Hearings before the House Committee on the Judiciary on H.R. 5373 and H.R. 6463,* 77th Cong., 2d Sess. 49 (1942).

**4.** For an overview and discussion of these efforts and the bills resulting therefrom, see *Report of the Joint Committee on the Organization of Congress to Accompany S. 2177,* S.Rep. No.1400, 79th Cong., 2d Sess. 30 (1946); Jayson, *Handling Federal Tort Claims,* §§ 59-61 (1981).

**5.** Pub. L. No. 79-601, 60 Stat. 842 (1946).

**6.** Pub.L.No. 79-601, § 410(a), 60 Stat. 844 (1946).

**7.** Pub.L.No. 79-601, § 420, 60 Stat. 845 (1946).

**8.** Pub.L.No. 86-238, § 1(1), 73 Stat. 471 (1959).

**9.** *See* Pub.L. No. 79-601, § 420, 60 Stat. 845 (1946).

**10.** Pub.L.No. 89-506, 80 Stat. 306 (1966).

**11.** *See* S.Rep.No.1327, 89th Cong., 2d Sess. 3 (1966), U.S. Code Cong. & Admin.News 1966, 2515.

**12.** *Id.* at 4.

**13.** *Id.* at 3.

**14.** *Id.*

**15.** *See* 28 U.S.C. § 2675(a).

**16.** *See* 28 U.S.C. § 2672.

**17.** S.Rep.No.1327, 89th Cong., 2d Sess. 2 (1966), U.S. Code Cong. & Admin.News 1966, 2515-16.

tion and avoid unnecessary litigation, while making it possible for the Government to expedite the fair settlement of tort claims asserted against the United States." [18]

## III

In section 2675(a) of the Act,[19] Congress defined the relationship between the administrative claim settlement process and access to the courts as follows:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make a final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section . . . .

As is plain from the language of the statute, claimants may bring suit in federal court only if, after they have presented their claims to the appropriate federal agency, the agency has either

1) "finally denied" the claim in the statutorily prescribed manner; or

2) failed to make a "final disposition" of the claim at the time suit is filed and six months have elapsed from the date upon which the claim was presented to the agency.

These alternative pre-conditions have often been termed "jurisdictional" prerequisites to suit.[20]

An ultimate issue in this case is whether appellant has satisfied either of these pre-conditions. The government contends she has not. First, the government argues that appellant's claim for $791 was not "finally denied" because HEW granted it in full. Second, the government asserts that by granting the claim in full on August 10, 1978, HEW made it the subject of a "final disposition" and did so before appellant filed suit. The government therefore concludes that the district court properly dismissed appellant's complaint for lack of subject matter jurisdiction.

The government also argues that it properly refused to consider appellant's amended claim because it was untimely under the pertinent regulation, 28 C.F.R. § 14.2(b). That regulation provides: [21]

> A claim presented in compliance with paragraph (a) of this section may be amended by the claimant *at any time prior to final agency action or prior to the exercise of the claimant's option under 28 U.S.C. 2675(a).* Amendments shall be submitted in writing and signed by the claimant or his duly authorized agent or legal representative. Upon the timely filing of an amendment to a pending claim, the agency shall have six months in which to make a final disposition of the claim as amended and the claimant's option under 28 U.S.C. 2675(a) shall not accrue until six months after the filing of an amendment.

The government argues that the amended claim was untimely because it was filed *after,* rather than prior to, "final agency action" (the decision to grant the claim for $791 in full), and because it was filed at a time when appellant had no option under section 2675(a) to exercise, HEW having made a final disposition of the claim before suit was filed.

 Appellant does not challenge the Justice Department's interpretation of sec-

---

**18.** *Id.*

**19.** 28 U.S.C. § 2675(a).

**20.** *See e. g., Employees Welfare Committee v. Davis,* 599 F.2d 1375 (5th Cir. 1979); *Three-M Enterprises Inc. v. United States,* 548 F.2d 293

(10th Cir. 1977); *Com. of Pennsylvania by Sheppard v. National Ass'n of Flood Insurers,* 520 F.2d 11 (3d Cir. 1975); *Caton v. United States,* 495 F.2d 635 (9th Cir. 1974).

**21.** 28 C.F.R. § 14.2(b) (emphasis added).

tion 2675(a), and we see no reason to dispute that a claim which has been granted in full has not been "finally denied" and has

been made the subject of a "final disposition".[22] We accordingly agree that appellant's claim for $791 provided no basis for

**22.** Cf. Ferreira v. United States, 389 F.2d 191 (9th Cir. 1968).

While not disputing that an agency makes a final disposition of a claim within the meaning of section 2675(a) when it grants the claim in full, appellant argues that HEW lacked the power to make a final disposition of her claim for $791. First, she argues that her SF 95 was so lacking information that it could not properly be considered a claim within the meaning of the Act. It is true that appellant's SF 95 contained little more than her name, address, and the figure "$791.00" in blank 10D, which was entitled "Amount of Claim (in dollars) . . . Total". We also note parenthetically that the government in the past has suggested to claimants that they resubmit a more complete claim form when presented with one such as appellant's, see e. g., Robinson v. United States Navy, 342 F.Supp. 381 (E.D.Pa.1972), a practice we commend and one which might well have been used in this case. The government points out, however, that it was in possession of all the information requested on the SF 95 when it granted appellant's claim, having culled the information from letters sent by appellant, her attorney, and her physicians, and argues that this is all that is required by 28 C.F.R. § 14.2(a), which provides:

For purposes of the provisions of section 2672 of Title 28, United States Code, a claim shall be deemed to have been presented when a Federal agency receives from a claimant, his duly authorized agent or legal representative, an executed Standard Form 95 or *other written notification of an incident, accompanied by a claim for money damages in a sum certain* for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident. If a claim is presented to the wrong Federal agency, that agency shall transfer it forthwith to the appropriate agency.

28 C.F.R. § 14.2(a) (emphasis added). The government also states that:

This regulation reflects the common sense approach that it is the information that is necessary for the government to make its decision [that is important] and not the manner in which the information is presented. To hold otherwise would be to subject a claimant to meaningless procedure which might prevent the allowance of a just claim.

Brief for Defendant-Appellee, p. 10. We commend the government for the non-hypertechnical attitude it has taken towards this regulation, and for its willingness to see that justice is done. Such an attitude might well have been taken with respect to its interpretation of 28 C.F.R. § 14.2(b), see infra.

In any event, it is settled law that an agency's interpretation of its own regulation is entitled

to great judicial deference and will not be overturned unless plainly erroneous or inconsistent with the regulation. Udall v. Tallman, 380 U.S. 1, 16–17, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 413–414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945); Hubbard Broadcasting, Inc. v. FCC, No. 79–1549 (D.C.Cir. December 29, 1980). We accordingly defer to the Justice Department's interpretation of its own regulation, which was promulgated by the Attorney General pursuant to the authority granted by Congress in the Act, see 28 U.S.C. § 2672; 28 C.F.R. Part 14, and hold that the SF 95, combined with the letters referred to above, constituted "other written notification of an incident, accompanied by a claim for money damages in a sum certain", 28 C.F.R. § 14.2(a). This interpretation of the regulation makes particular sense as applied to the facts of this case because the record makes clear that, despite the barren nature of the SF 95, both appellant and the government treated the SF 95 as a valid claim and acted accordingly.

Alternatively, appellant argues that HEW could not make a final disposition of her $791 claim because HEW either knew or should have known that it contained a "mistake". While we agree with the foregoing statement as a matter of principle, cf. Little v. United States, 317 F.Supp. 8 (E.D.Pa.1970), the facts of this case provide no room for its application. First, appellant has not even identified the "mistake" her SF 95 allegedly contained. Her letter requesting a claim form estimated that her medical bills to date amounted to approximately $600, and her SF 95, filed just a few weeks later, requested $791 in damages. Thus, this is not a case in which the agency had knowledge, before it granted the claim, that the claimant was seeking recovery of a sum greater than the amount specified in the SF 95. Second, although the correspondence from appellant and her attorney indicated that appellant had experienced pain and suffering and a partial disability as a result of the immunization, neither appellant nor her attorney ever expressed any dissatisfaction with the amount claimed in her SF 95 or attempted to amend it before HEW purported to grant the claim in full. While appellant's failure to request all her damages in the original SF 95 is an oversight on her part the statute excuses, see infra, we can not say that HEW's knowledge that appellant might be entitled to more damages than she had claimed invalidates the granting of the original claim.

Appellant also contends that HEW's final disposition of her claim is ineffective because HEW "snapped up" the claim once it realized Odin had hired an attorney in order to prevent her from amending her claim to request her full

bringing suit under section 2675(a). We hold, however, that Justice's interpretation of the term "final agency action" in 28 C.F.R. § 14.2(b) is plainly erroneous.[23] In our judgment, "final agency action" occurs when the agency has taken the final step necessary to settle the claim—*i. e.*, when the agency has procured the claimant's acceptance of the agency's offer to settle the claim. This interpretation is mandated not only by an express provision in the Act but also by the purpose of the Act in general and the 1966 amendments in particular. It therefore follows that the Torts Branch erred when, after Odin rejected HEW's proffered settlement, the Torts Branch "disregard[ed]" her amended claim and refused to consider it on its merits. This conduct, we hold, constituted a final denial of appellant's amended claim, and authorized the instant suit.

## IV

The government's interpretation of the term "final agency action" is apparently based upon its view of the legal significance of an administrative claim. As reflected by the Torts Branch's letter to counsel, the government considers an administrative claim to be an "offer" by the claimant to settle the claim for the sum certain stated therein. Thus, according to the government, when an agency grants a claim, it "accepts" the claimant's offer, extinguishing the claim and replacing it with an executory contract. The claim is then no longer pending and can not be amended. Since it is the agency action of granting or accepting the claim which extinguishes it, the government labels this conduct "final agency action". Similarly, when an agency denies a claim, or rejects the offer, the act of denying the claim, according to the government, is also logically "final agency action".

The fundamental error in this conception of the claims process, however, is that the Act explicitly vests the power of acceptance in the *claimant*, and not in the agency. The significance of the government's conceptual error is immediately apparent; since the statute gives the claimant the power of acceptance, an agency's decision to grant the claim is not an acceptance, but an offer. And backing up one step further, an administrative claim is therefore not an offer, but an invitation to negotiate. Accordingly, "final agency action" does not occur when an agency makes an offer, but rather when the last step necessary to form an executory contract has been taken—when the claimant accepts the agency's offer.

There can be little doubt that the Act vests the power of acceptance in the claimant. Section 2672 of the Act[24] clearly provides:

> The *acceptance by the claimant* of any such award, compromise, or settlement shall be final and conclusive on the claimant, and shall constitute a complete release of any claim against the United States and against the employee of the government whose act or omission gave rise to the claim, by reason of the same subject matter.

The legislative history of the 1966 amendments is equally clear on this point. In describing the purpose of the amendments, the Senate Committee on the Judiciary stated:[25]

> The bill would provide the *agencies* with the authority to make settlement *offers* which could result in settlement of a large percentage of tort cases where under today's conditions the present $2,500 limit means that administrative settle-

---

damages. In light of our disposition of this case and the district court's failure to make any findings of fact upon this point, we do not address this argument.

**23.** 28 C.F.R. § 14.2(b) was also promulgated by the Attorney General pursuant to the authority granted by Congress in the Act, *see* 28 U.S.C. § 2672; 28 C.F.R. Part 14. As demonstrated above, however, we have no trouble concluding

that, despite the deference due an agency's interpretation of its own regulation, this particular interpretation must fall.

**24.** 28 U.S.C. § 2672 (emphasis added).

**25.** S.Rep.No.1327, 89th Cong., 2d Sess. 4 (1966) (emphasis added).

ments are limited to property damage claims and relatively minor personal injury claims.

And in specifically discussing the manner in which the claims procedure would operate, the Committee explained: [26]

> The procedure provided in the bill would require a claimant to file a claim with the agency within two years after the claim accrues. The agency will then have six months to consider the claim prior to granting or denying it. Final denial in this connection includes instances where partial approval of a claim results in *an offer unacceptable to the claimant* and rejected by him. Thus the end result would be a denial of the claim.

Finally, and somewhat ironically, even the government implicitly recognizes that the power of acceptance resides in the claimant, for it provides a signature blank on its vouchers for the claimant to acknowledge his or her acceptance. For example, the voucher which was sent to appellant and which she refused to sign contained the following language:

### ACCEPTANCE BY CLAIMANT(S)

I, (We), the claimant(s), do hereby accept the within-stated award, compromise, or settlement as final and conclusive on me (us), and agree that said acceptance constitutes a complete release by me (us) of any claim against the United States and against the employee of the Government whose act or omission gave rise to the claim, by reason of the same subject matter.

Date ———, 19—

————————
(Claimant)

————————
(Claimant)

The only manner in which the language of section 2672 can be given meaningful effect is to hold that "final agency action" does not occur until the claimant has signed the agency's voucher and thereby indicated an acceptance of the agency's offer. This is made clear by the very facts of this case. Section 2672 declares that "*acceptance by the claimant* of any . . . settlement shall be *final and conclusive* on the claimant".[27] Under the government's construction of 28 C.F.R. § 14.2(b), however, appellant possesses no meaningful power of acceptance, and the agency's proffered settlement is final and binding upon her. Appellant's power of "acceptance" amounts to nothing more than the absolute obligation to comply with the agency's order to sign the $791 voucher and settle her claim for an amount she states does not fully compensate her for her injuries. The government's conduct is also "final and binding" upon appellant, because she is barred by statute from using in court, and barred by the government's interpretation of 28 C.F.R. § 14.2(b) from amending her claim to request the full amount of her damages. She has no choice whatsoever but to take the $791. There is absolutely nothing in the statute or its legislative history to support this one-sided view of the settlement process, and as we have shown, there is much that expressly contradicts it. Furthermore, we are unwilling to construe the settlement process in such a manner that appellant's refusal to sign HEW's voucher leaves her in practically the same position as if she had signed it.

Our interpretation of the term "final agency action" also furthers the purpose of the Act in general and the 1966 amendments in particular. Congress passed the Act to remove the often unjust shield provided by the doctrine of sovereign immunity and for the "broad and just purpose" of "compensat[ing] the victims of negligence in the conduct of governmental activities".[28] This goal of just compensation is not advanced by refusing to allow unknowledgeable claimants to amend their claims and seek *all* their damages when they failed, through ignorance of technical governmental procedures, to request their full damages in their original claims. Congress amended the Act in 1966 to make prior

---

26. *Id.* (emphasis added).

27. 28 U.S.C. § 2672 (emphasis added).

28. *Indian Towing Co. v. United States*, 350 U.S. 61, 68, 76 S.Ct. 122, 126, 100 L.Ed. 48 (1955).

resort to the administrative claim settlement process a mandatory prerequisite to suit to "expedite the *fair* settlement of tort claims asserted against the United States."[29] Our interpretation furthers the fair settlement of claims because it refuses to countenance the creation of arbitrary barriers to claims for full compensation for government inflicted injuries. As we have shown, the 1966 amendments were intended merely to relieve the courts of the burdens imposed upon them by the torrent of tort claims suits and to give the appropriate agencies an opportunity to settle these claims themselves. There is absolutely nothing in the statute or its legislative history to indicate that Congress, in requiring claimants to seek relief initially from the agency that harmed them, intended to set up a labyrinth of procedural rules and niceties in which one false step would deprive injured citizens of the relief Congress intended to grant them. Our review of the history of the statute and the 1966 amendments makes clear that Congress passed the statute for beneficent purposes, and it is our duty to give them effect. We accordingly strike down the government's interpretation of the term "final agency action".[30]

## V

When appellant filed her amended claim on September 5, 1978, she had refused to sign HEW's "Acceptance" voucher and thus had not accepted the agency's offer to settle her claim for $791. Her amended claim was therefore timely filed under 28 C.F.R. § 14.2(b). The question before us now is whether appellant was entitled to file suit in court.

We answer that question in the affirmative, and hold that the Torts Branch, in wrongfully "disregard[ing]" the amended claim, "finally denied" it within the meaning of section 2675(a). The agency's conduct required two years of litigation in the district court and before this court to establish a principle that is plain on the face of the statute. We see no point in requiring appellant at this stage of the game to return to the agency process and invest further time and resources before receiving her day in court. We accordingly reverse the judgment of the district court dismissing this suit for lack of subject matter jurisdiction, and remand this case for trial on the merits.

*Judgment accordingly.*

---

29. S.Rep.No.1327, 89th Cong., 2d Sess. 2 (1966), U.S.Code Cong. and Admin.News 1966, 2516 (emphasis added).

30. We recognize that an unscrupulous claimant might file a claim with an agency to test the agency's willingness to settle, and then file a larger amended claim after the agency has granted the original claim in full and thereby admitted a measure of liability. Such tactics, however, do not create a binding obligation on the government. We also note that there is absolutely nothing in the record to indicate that this is what occurred in this case. Furthermore, we find this objection unavailing for two reasons; first, our interpretation is mandated by the terms of the Act itself, and accordingly, any objections thereto should be directed to Congress; second, the "leverage" argument is largely illusory.

 Claimants are interested in receiving full compensation for their injuries in the shortest time possible, and if an agency grants a claimant's request in full, the claimant will normally accept the agency's offer. In addition, under 28 C.F.R. § 14.2(b), the filing of an amended claim entitles the agency to an additional six months to consider the claim, and postpones the claimant's right to file suit an additional six months. Thus, by filing amended claims, claimants prolong the period during which they must go without compensation, and, as a result, the filing of a groundless claim amendment is contrary to the self-interest of the claimant. Finally, even if a groundless amendment is filed, and the agency refuses to "up the ante", the Act itself bars the claimant from using the agency's previous settlement offer as evidence of liability or damages, 28 U.S.C. § 2675(c). ("Disposition of any claim by the Attorney General or other head of a federal agency shall not be competent evidence of liability or amount of damages.").